UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

_____
|
DOREEN L. WHEELOCK,                  |
                                     |    Civil Action No.
         Plaintiff                   |    2:17-cv-00479-NT
                                     |
   v.                                |
                                     |    FIRST AMENDED COMPLAINT UNDER
ANTHEM LIFE INSURANCE                |    29 U.S.C §1132
INSURANCE COMPANY,                   |
         Defendant                   |
_____ |

The Plaintiff complains against the Defendant as follows:

1. The Plaintiff is a resident of South Portland, Maine.

2. The Defendant is an insurance company incorporated in the State of Georgia and is licensed to do business in Maine.

3. This Court has jurisdiction of this lawsuit under 29 U.S.C. §1132.

4. The Plaintiff has exhausted all legally-required administrative remedies.

5. This lawsuit is timely filed.

### *ERISA-GOVERNED SHORT-TERM AND LONG-TERM DISABILITY PLANS*

6. As a full-time employee of Preservation Management, Inc., the Plaintiff was insured under the Group Short-Term Insurance Policy (the "STD

Policy") and Group Long-Term Disability Insurance Policy (the "LTD Policy") issued by the Defendant to Preservation Management, Inc.

7. The Policy's definition of disability, as applied here, is that the Plaintiff is unable, because of injury or illness, to perform the material and substantial duties of her own occupation and is receiving regular care from a physician from that injury or illness.

8. The Plaintiff's "own occupation" for Preservation Management, Inc. based on the job description provided by Anthem and on the independent vocational analysis by and opinion of Susan McCarron, MSEd, CRC, was "Director of Compliance".

9. The definition of disability under the LTD Policy does not change at any point to what is referred to in the long term disability insurance industry as an "any gainful occupation" test of disability.

10. As well-articulated by vocational expert Susan McCarron, MSEd, CRC, the effective performance of the Plaintiff's Regular Occupation requires a high level of expertise and special skills and knowledge in the following areas: housing and property compliance management; exceptional people and process management; complex policy creation and implementation; a high level of complex thinking and decision-making; a high level of concentration, focus and complex problem-solving, and an ability to multitask and "juggle" all of her complex "competing priorities."

### *Relevant Facts*

11. The Plaintiff suffers from the severe illnesses of ischemic colitis, depressive disorder, and anxiety disorder.

### The Plaintiff's Anxiety Disorder and Depressive Disorder

12. The Plaintiff's psychologist, Frank Luongo, Ph.D., in his October 5, 2016 Attending Physician's Statement completed at the Defendant's request, states that Ms. Wheelock's symptoms are "sleep problems, concentration, anxious, shortness of breath, shaky, dizzy, volatile in mood" and that these symptoms are "complicated by multiple severe medical problems." Dr. Luongo states that his diagnosis of Ms. Wheelock is that she suffers from "severe depression" and, as of the date of his Attending Physician Statement, she is "more anxious & depressed."

13. Dr. Luongo further opined in this Attending Physician's Statement that the Plaintiff "is unable to engage in stress situations or engage in interpersonal relations (marked limitations)."

14. Dr. Luongo further states in this Attending Physician Statement that the Plaintiff "is unable to concentrate for extended periods required for effective employment. She is anxious, hypersensitive and suffering a number of physical symptoms which are incapacitating and may well be attributed to emotionally-based factors. Her depression is severe."

15. On March 20, 2017, Ms. Wheelock's psychologist, Frank Luongo, PhD, completed his Mental Impairment Questionnaire.

16. In this completed Questionnaire, Dr. Luongo first states that he began treating Ms. Wheelock on August 25, 2016 and she "experienced severe depression and deterioration in her mental functioning on or about June 28, 2016."

17. Dr. Luongo further states that since June 28, 2016, Ms. Wheelock has had the following signs and symptoms of her severe mental illnesses: "Anhedonia or pervasive loss of interest in most activities; generalized persistent anxiety; chronic depression; chronic feelings of grief and sadness; difficulties concentrating or thinking; difficulties controlling worry; emotional withdrawal or isolation; persistent fatigue; lack of energy; feelings of hopelessness [and] some suicidal thinking has been present."

18. In this completed Questionnaire, Dr. Luongo states that he believes that since June 28, 2016, if Ms. Wheelock attempted to return to work, her severe mental impairments would "frequently" (defined in his Mental Impairment Questionnaire as "between 1/3rd and ½ of a normal workday and work week) prevent her from maintaining the attention and concentration needed to understand, remember and perform even simple work tasks, explaining "She has been volatile emotionally and her reactions are frequent and unreliable."

19. Dr. Luongo further believes that since June 28, 2016, if Ms. Wheelock attempted to return to work, she likely would miss 1-2 days of work per month due to the symptoms of her severe mental illnesses, explaining: "She would miss many days of work based on the more or less continuous struggle w/ her mental illnesses."

20. Additionally, Dr. Luongo believes that since June 28, 2016, if Ms. Wheelock attempted to return to work, her severe mental impairments would "frequently" require her to have additional and unscheduled breaks during the course of a normal workday and work week for relief from her severe mental and emotional symptoms. Dr. Luongo explains this opinion as follows: "She is unable to fulfill continuous employment responsibility with any degree of predictability."

21. Dr. Luongo believes that since June 28, 2016, if Ms. Wheelock attempted to return to work, her severe mental impairments would "frequently" interfere with her ability to persist at and complete normal work tasks, explaining: "She suffers frequently anxiety reactions, depressive episodes, crying spells and agitation."

22. Dr. Luongo also believes that since June 28, 2016, if Ms. Wheelock attempted to return to work, she would be unable to consistently adapt to routine changes in the workplace and/or her work duties.

**The Plaintiff's Ischemic Colitis**

23. Prior to the March 2017 date of the Plaintiff's bowel resection followed by emergency surgery due to a drop in her hemoglobin level, her physicians were not completely sure of the cause of her ongoing severe abdominal pain, rectal bleeding, diarrhea, weakness, dizziness, and fatigue.

24. Finally, in March 2017, her surgeon, Karin Cole, MD, reviewed her recent CT scan and determined that the Plaintiff had a section of her bowel which previously had died and that when the bowel tissue grew back, an extra flap of bowel tissue formed. Dr. Cole told the Plaintiff that every time she ate, this flap caused her severe abdominal pain and rectal bleeding, which in turn caused her to feel extremely weak and fatigued.

25. Dr. Cole recommended that the Plaintiff undergo surgery so that she could confirm her diagnosis and if correct, she would resect the Plaintiff's bowels to try and resolve her symptoms.

26. The Plaintiff underwent this surgery in March 2017, which confirmed Dr. Cole's diagnosis and Dr. Cole performed the bowel resection.

27. Unfortunately, while her stabbing abdominal pain and rectal bleeding was reduced after this surgery, the Plaintiff's extreme weakness and fatigue, and daily and regular bouts of diarrhea have continued.

28. The Plaintiff's primary care physician, Daniel Merson, DO, believes that due to the Plaintiff's anxiety disorder and ischemic colitis, and resulting

symptoms, the Plaintiff is "unable to engage in stress situations or engage in interpersonal relations (marked limitations)."

29. Dr. Merson states that she is not a suitable candidate for occupational rehabilitation in her "own job" or in "any other work" and that when she could trial employment commence is "unknown."

30. The Plaintiff was forced to cease her Regular Occupation due to a combination of her depressive disorder, anxiety disorder, and ischemic colitis.

### *Wrongful Denial of the Plaintiff's STD Claim and LTD Claims*

31. The Defendant's denial of the Plaintiff's STD and LTD Claims should be adjudicated under the "sliding scale" standard of review as whether the Defendant's denial was right or wrong based on the Defendant's actual conflict of interest.

32. In the alternative, the Defendant's denial of the Plaintiff's STD and LTD Claims should be evaluated under the arbitrary and capricious standard.

33. Under either standard of review, the Defendant's denial of the Plaintiff's short term and long term disability claims was erroneous.

### *Prayer for Relief*

34. Pursuant to 29 U.S.C. §1132(a)(A)(1)(B), the Plaintiff respectfully asks this Court to enforce her rights under the terms of the Group STD

Policy and LTD Policy issued by the Defendant under which the Plaintiff was insured, and enter the following judgment:

A. Reverse the Defendant's denial and award the Plaintiff her STD Claim and LTD Claim benefits she is entitled to since June 28, 2016, the date she became disabled, with interest;

B. Direct the Defendant to continue to pay the Plaintiff her monthly LTD benefits as long as she qualifies for such benefits under the terms of the Preservation Management, Inc. ERISA-governed STD and LTD Policies; and

C. Order the Defendant to pay the Plaintiff's attorneys their reasonable attorneys' fees.

                                                 Respectfully submitted:

Date: February 22, 2018        /s/ Andrew J. Bernstein
                                         Andrew J. Bernstein, Esq.
                                         Bar No. 002257
                                         Attorney for the Plaintiff
                                         Law Offices of Joe Bornstein
                                         P.O. Box 4686
                                         Portland, ME 04112